IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2003

## STATE OF TENNESSEE v. JERRY LEE MILLER, SR.

**Appeal from the Criminal Court for Sullivan County**
**No. S44,897     Phyllis H. Miller, Judge**

_____

**No. E2002-01921-CCA-R3-CD**
**March 20, 2003**
_____

Jerry Lee Miller, Sr. appeals from the Sullivan County Criminal Court's imposition of incarcerative sentencing for his effective five-year sentence for two counts of statutory rape. Miller pleaded guilty to the offenses as a Range II offender, and the manner of service of the sentence was reserved for the lower court's determination. Miller posits on appeal that he should have been afforded a sentence involving either split confinement or straight probation. We disagree, however, and affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Leslie Hale, Blountville, Tennessee (at trial); and Julie A. Rice, Knoxville, Tennessee (on appeal), for the Appellant, Jerry Lee Miller.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; H. Greeley Welles, Jr., District Attorney General; and Teresa M. Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Over a course of several years, the defendant sexually abused the minor victim, who is his girlfriend's daughter. The defendant lived in the same home with the victim during most or all of this time. This activity was discovered at one point, and the victim was placed first in foster care and later with her biological father. The victim was eventually allowed to return to her mother's home, and although the defendant was not supposed to be present in the home, he arrived shortly after the victim's return and resumed molesting her.

The defendant's activity came to light a second time, and he was charged with one count of rape.[1] Through agreement with the state, the defendant was later charged by information with two counts of statutory rape, to which he pleaded guilty, and the rape charge was dismissed. An additional charge of reckless endangerment was also dismissed, this charge apparently stemming from the defendant's attempt to run off the road a vehicle in which the victim was a passenger.[2] The defendant agreed to a two-year sentence on one count and a three-year sentence on the other count. He likewise agreed to consecutive service, for a five-year effective sentence. Moreover, he agreed to be classified as a Range II offender, even though his sole prior misdemeanor conviction would otherwise qualify him for Range I sentencing.

Thereafter, the defendant underwent the statutorily required sexual offense risk assessment. *See* Tenn. Code Ann. § 39-13-705 (Supp. 2002). The examiners opined that the defendant presented a low risk for reoffending if he received proper treatment, although further offenses were likely to occur absent treatment. In this regard, the examiners characterized the defendant as a "situational child molester," that is, he is not predatory but takes advantage of opportunities which present themselves. He was categorized as a "fair to good candidate" for outpatient treatment, and several restrictive conditions were recommended should he be granted a sentence involving outpatient treatment. The examiners further opined that the defendant had not been entirely truthful with them about his history of sexual contact with other minor children, which he denied. They likewise noted that the defendant was not able to see the harm that he had caused the victim, inasmuch as he blamed the victim for the offenses and characterized himself as a victim of her seduction.

At the sentencing hearing, neither the state nor the defendant offered any testimonial proof. The only evidence received was that contained in the presentence report and the sexual offense risk assessment report. The presentence report contained a lengthy victim impact statement, as well as written statements from the two relatives with whom the victim was residing.

After considering the evidence, the trial court found that the defendant should be incarcerated for the entirety of his sentence and ordered that his sentences be served in the Department of Correction. The defendant then appealed.

The only issue before us is the propriety of the trial court's order of incarcerative sentencing. In making a felony sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial

---

[1] The charging instrument does not appear in the record, and the charge is referred to in the record as one of "rape."

[2] The defendant had been convicted of reckless endangerment in general sessions court, and the case was pending on appeal to the criminal court at the time it was dismissed. It is not clear whether this charge was dropped as part of the plea agreement. It is not mentioned in the paperwork relative to the plea agreement; however, the state's desire to enter a *nolle prosequi* as to it was announced at the hearing on the plea agreement.

and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. *See* Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5) (1997) and (Supp. 2002); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1997). However, a defendant who commits "the most severe offenses, possess[es] a criminal histor[y] evincing a clear disregard for the laws and morals of society, and [has failed] past efforts at rehabilitation" does not enjoy the presumption. *See id.* § 40-35-102(5), (6) (1997); *State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). A sentence involving confinement is appropriate when

(A)     Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B)     Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C)     Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A) - (C) (1997).

Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. *Id.* § 40-35-103(5) (1997). Sentencing issues are to be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *See* Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Likewise, the trial court has an affirmative duty to state on the record, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. §§ 40-35-209(c), -210(f) (Supp. 2002); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998); *State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999).

The defendant in this case entered his pleas as a Range II offender; thus, he does not enjoy the presumption of favorable candidacy for alternative sentencing. *See* Tenn. Code Ann. §

40-35-102(6) (1997). Therefore, he bore the burden in the trial court of demonstrating the propriety of a sentence other than one of total confinement.

The lower court found applicable enhancement factors relative to the defendant's prior history of criminal convictions or behavior, the particularly great personal injuries inflicted on the victim, the offense having been committed to gratify the defendant's desire for pleasure or excitement, and the defendant's abuse of a position of private trust. *See id.* § 40-35-114(2), (7), (8), (16) (Supp. 2002). On the other hand, the court found mitigating factors based upon the defendant's favorable work history and his voluntary admission of guilt. *See id.* § 40-35-113(13) (1997). The court then found that the enhancement factors were entitled to far more weight than the mitigating factors.

The court was significantly unimpressed with the defendant's amenability to rehabilitation, finding that the defendant failed to take responsibility for his actions by blaming the victim, was not truthful about the offenses, and had engaged in similar activity with the same victim on many prior occasions. The court expressed concern that the defendant would not exhibit appropriate conduct toward the victim if he were allowed to remain in a non-incarcerative setting, in that the defendant was residing in the victim's mother's home, and the victim was living less than one mile away. The court found that the defendant had committed a violent offense and was not eligible for a Community Corrections sentence, and that he had not demonstrated suitability for a probationary sentence. Thus, the court imposed a fully incarcerative sentence.

Upon appellate review, we agree that the defendant has not demonstrated that he is a suitable candidate for alternative sentencing. Indeed, the evidence demonstrates otherwise. Because he was convicted of crimes against the person, the defendant is not eligible for Community Corrections sentencing. *See id.* § 40-36-106(a)(2) (Supp. 2002). On appeal, he aptly concedes his ineligibility for this form of alternative sentencing.

Thus, the remaining options for alternative sentencing are full probation and split confinement coupled with probation. The trial court's findings that the defendant is a poor candidate for rehabilitation due to his lack of remorse, lack of candor, and untruthfulness are supported by the record. These findings in turn support the lower court's determination that the defendant did not carry his burden of demonstrating his suitability for full probation. *See* Tenn. Code Ann. § 40-35-103(5) (1997); *State v. Pierson*, 678 S.W.2d 905, 906 (Tenn. 1984); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); *State v. Dowdy*, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994).

The defendant likewise has demonstrated neither in the trial nor the appellate court that he is an appropriate candidate for an alternative sentence involving probation as part of a sentence of split confinement. As noted by the trial court, the potential for the defendant's conduct to go awry, if he is released, is substantial. On a prior occasion, the victim was returned to her mother's home on the condition that the defendant not be present in the home, yet he moved into the

home within a month. There is likewise evidence that following the initiation of these charges, the defendant harassed the victim by running off the road a vehicle in which she was a passenger and repeatedly drove by the home in which the victim lived, even though he had been ordered not to do so. Given these overwhelming indications that the defendant has little or no desire to abide by restrictions placed upon him relative to contact with the victim, we, like the trial court, are loath to give judicial sanction to his remaining in the community during a portion of a sentence of split confinement.

In light of all of the evidence, the defendant cannot carry the burden of demonstrating that an alternative sentence is appropriate for him. We therefore affirm the lower court's imposition of Department of Correction sentencing.

_____
JAMES CURWOOD WITT, JR., JUDGE